Henry J. **AMERT** and Arleen Amert,
Plaintiffs and Appellants,

v.

**CONTINENTAL CASUALTY COMPANY,**
Kundert-Williams Insurance Agency,
and American Federal Savings and
Loan Association, Defendants and Appellees.

No. 15523.

Supreme Court of South Dakota.

Considered on Briefs May 21, 1987.

Decided July 22, 1987.

J.B. Lammers of Lammers, Lammers, Kleibacker & Casey, Madison, for plaintiffs and appellants.

William C. Garry of Cadwell, Sanford & Deibert, Sioux Falls, for defendant and appellee Continental Cas. Co.

Richard O. Gregerson of Woods, Fuller, Shultz & Smith, P.C., Sioux Falls, for defendant and appellee Kundert-Williams Ins. Agency.

SABERS, Justice.

Henry and Arleen Amert (Amert) appeal an order granting summary judgment to Continental Casualty Company (Continental) and Kundert-Williams Insurance Agency (Kundert-Williams). We affirm.

### Facts

Amert owns the "Rec" building in Madison, South Dakota. This metal structure was built in December 1977 and January 1978 as a recreation facility associated with an apartment complex. In the spring of 1979, Amert noticed that the building was deteriorating due to corrosion and rust. Subsequently, the structure suffered extensive damage from corrosion and rust due in substantial part to the placement of a corrosive cellulose insulation between the interior and exterior walls.

Continental issued Amert an insurance policy covering the Rec, with a policy period from July 10, 1979 to July 10, 1982. Amert cancelled this policy on July 10, 1980. Continental's policy was replaced by a Travelers Insurance Company (Travelers) policy which was sold to Amert by Kundert-Williams. This insurance had a policy period of April 1, 1981 to April 1, 1982.

Since the damages occurred during periods of time when both policies were in effect, Amert sought coverage from both Continental and Kundert-Williams for the damage to the steel walls of the Rec building. Continental and the Travelers, through Kundert-Williams, denied coverage and contended that Amert's losses were expressly excluded under the policy provisions. Thereafter, Amert commenced this declaratory judgment action in April of 1983 against Continental and Kundert-Williams seeking indemnity for his losses resulting from the corrosion and rust. In the complaint, Amert contended that the Continental policy should have provided coverage for the damage to the steel walls. He further claimed that the replacement policy from Kundert-Williams was intended to provide identical coverage to the previous "all risk" policy sold by Continental. The policy sold to Amert by Kundert-Williams was a "specific perils" policy. Both insurers denied coverage on the basis that the respective policies contained an exclusion for "inherent vice" which included the defective "corrosive cellulose insulation" involved in Amert's building. Amert claimed that Kundert-Williams was negligent in failing to provide the same coverage previously afforded under the Continental policy, and that Kundert-Williams should be liable to Amert for the identical coverage.

While this declaratory judgment action was pending and without pressing it to a conclusion, Amert brought and pursued to conclusion a products liability action against Ziebarth and U.S. Fiber alleging that the building's cellulose insulation was defective. Following a jury trial in November 1985, Amert was awarded the full amount of damages requested in his complaint: $95,505. This sum was awarded on theories of negligence and breach of express and implied warranties. The jury verdict was based upon Amert's September 28, 1982 repair estimate. Following the verdict, Amert moved for an award of prejudgment interest which was denied. On appeal, this court reversed the trial court and held prejudgment interest was warranted and should have been awarded. *See Amert v. Ziebarth Constr. Co.*, 400 N.W.2d 888 (S.D.1987).

After the products liability case was finally resolved in favor of Amert, Continental and Kundert-Williams moved for summary judgment arguing that the jury ver-

dict awarded damages up to the date of trial and that Amert was fully compensated for his losses. They further argued that Amert was barred from relitigating the issue and that the prior case had impaired the insurers' subrogation rights. They also argued that Amert's distinction between Continental's "all risk" policy and Kundert-Williams' "specific perils" policy was immaterial because the "occurrence" (defective insulation) upon which Amert based his damage claim for corrosion and rust was specifically excluded under the "inherent vice" exclusion contained in each insurance policy. According to the insurers, neither policy would provide coverage for Amert's losses.

On August 1, 1986, the trial court granted the summary judgment motions and dismissed Amert's declaratory judgment action. The court did not reach the question of whether the policies provided coverage.

### Amert's Claims

Amert claims that the damage to the Rec building was of a continuing nature and that the amount awarded in the previous lawsuit does not fully compensate him for the losses sustained after 1982. He further claims that genuine issues of material fact exist as to whether his losses were covered under both of the insurance policies.

### 1. SUMMARY JUDGMENT

Summary judgment is allowed only when the movant is entitled to judgment as a matter of law because there are no genuine issues of material fact. SDCL 15–6–56(c); *Trapp v. Madera Pacific, Inc.*, 390 N.W.2d 558, 564 (S.D.1986). The remedy is extreme and it is not intended as a substitute for a trial. *Id.* at 562; *Wilson v. Great Northern Ry. Co.*, 83 S.D. 207, 212, 157 N.W.2d 19, 21 (1968). When no genuine issues of material fact exist in a case, the legal questions may be properly decided by summary judgment. *Hamaker v. Kenwel-Jackson Machine, Inc.*, 387 N.W.2d 515 (S.D.1986).

### 2. AMERT'S TOTAL DAMAGES

The trial court did not reach nor rule upon the issue of whether Amert's losses were covered by the respective insurance policies issued by Continental and Kundert-Williams. In granting their motions for summary judgment, the court said:

[A]fter the previous trial of Amert vs. Ziebarth [Plaintiffs] moved the Court to add interest on the judgment commencing from the 1982 estimate. The Court denied this motion on the grounds the jury verdict was a determination of damages sustained up to the time of trial. During the trial both Plaintiffs and Defendants offered different values for damages sustained. A jury, after being properly instructed, made a determination which the Court felt was fair and equitable. Plaintiffs have appealed this previous decision of the Court in disallowing pre-judgment interest to the South Dakota Supreme Court. Therefore, the Supreme Court will make the final decision which will be binding on the parties. If the Supreme Court affirms this Court, they will find that the jury determined damages as of the date of trial, or if they reverse, pre-judgment interest will be added. In either event, Plaintiffs will be made whole and entitled to no additional compensation.

The jury awarded Amert $95,505 as damages to the Rec building based on the September 1982 repair estimate. Amert contends that the damage to the building as of September 4, 1985, amounted to $141,910, and that the present damages exceed that estimate. The jury rendered its verdict in November of 1985. Amert argues that due to the continuing nature of the damages, the policies in question should provide coverage for the post–1982 damages to the Rec building to the extent that Amert has not been fully reimbursed for his losses. Amert seeks $46,405, which is the difference between the jury verdict and the September 1985 repair estimate.

Although Amert contends that the building continued to deteriorate after the first repair estimate was prepared in September of 1982, Amert failed to amend his com-

plaint to conform to the September 1985 repair estimate. Consequently, the jury concluded that the building could be completely repaired for $95,505. Having failed to present the jury with evidence of the 1985 repair estimate, Amert cannot now claim damages in excess of the jury verdict. To do so would allow him to relitigate the damage issue which is barred under the doctrine of res judicata, *Melbourn v. Benham*, 292 N.W.2d 335 (S.D.1980). The previous lawsuit has also served to impair Continental and Kundert-Williams' subrogation rights.

The doctrine of subrogation, when applied in the insurance context, deals with the right of the insurer to be put in the position of the insured in order to pursue recovery from third parties, legally responsible to the insured, for a loss paid by the insurer to the insured.... If the insured has been compensated in full by the insurer for the loss sustained, and subsequently receives recovery from a third party, the insurer's right becomes a right to the proceeds if subrogation is found to apply. [citations omitted]

The purpose of subrogation is to place the loss ultimately on the wrongdoers.... It also prevents the insured from recouping a windfall double recovery. [citations omitted]

*Cunningham v. Metropolitan Life Ins. Co.*, 121 Wis.2d 437, 442, 360 N.W.2d 33, 36 (1985).

▮ If we were to find for Amert in this action and allow recovery of benefits under the insurance policies, then Continental and Kundert-Williams would be subrogated to Amert's right of recovery against the defendants in the previous lawsuit, i.e., against Ziebarth and U.S. Fiber. Since the amount of damages ($95,505) and the proportionate liability of Ziebarth and U.S. Fiber for those damages has already been determined, Continental and Kundert-Williams' subrogation rights are impaired, and they would be effectively barred by principles of collateral estoppel and res judicata from relitigating the amount of damages which Amert is presently seeking. *Melbourn, supra* at 337. An insured is prohibited from impairing his insurer's

right to subrogation. *See Flanary v. Reserve Ins. Co.*, 364 Mich. 73, 110 N.W.2d 670 (1961); *Conard v. Moreland*, 230 Iowa 520, 298 N.W. 628 (1941). Since Amert is barred from seeking additional damages from Ziebarth, so are Amert's subrogees, Continental and Kundert-Williams.

By contrast, in *City of Cedarburg Light & Water Comm'n v. Glens Falls Ins. Co.*, 42 Wis.2d 120, 166 N.W.2d 165 (1969), the insured brought suit against its insurers to recover for damage to its power generating equipment resulting from two separate fires. The insurers denied liability. The insured then commenced an action against the wrongdoers and recovered judgments against them. The insurers knew of the pendency of that litigation and did not participate in the third party suit. After recovering from the wrongdoers, the insured filed a supplemental action against the insurers seeking to recover certain unrecovered litigation expenses incurred in the third party suit. The insured argued that each insurer breached its contract of insurance in denying liability on its policy which caused it damages to the extent of the litigation expenses incurred in the third party action. The trial court denied the insurers' motion for summary judgment and they appealed. *Id.* 166 N.W.2d at 166.

On appeal, the insurers argued that the insured's prior recovery of its damages from the third party was a bar to any claim because the insurers' subrogation rights had been destroyed. *Id.* 166 N.W. 2d at 168. In rejecting this argument, the court wrote:

On the record before us, it does not appear that the defendants have made any payments under the policies which would give rise to possible subrogation rights. *More importantly, the present case is not for recovery under the policy but rather for breach of contract to recover costs and expenses of the third party litigation.* In the event there is coverage under the insurance contracts and the defendants, with knowledge of the ... third party action, elected not to join in its prosecution or to contribute to the expenses thereof, the case stands as if subrogation had been offered and refused. (emphasis added)

*Id.* As distinguished from *City of Cedarburg, supra,* Amert is attempting to recover under one policy which was issued to him by Continental and one sold to him by Kundert-Williams. He is not seeking to recover the litigation expenses incurred in the products liability action under a theory of breach of insurance contract, nor is he attempting to recover against Kundert-Williams for misrepresenting the insurance he purchased.

The jury awarded Amert the full amount of damages requested in his complaint. The September 1985 repair estimate, as well as evidence of continuing damage, future damage, or all damages including building replacement cost, should have been presented to the jury.* Amert had his day in court to recover all of the damages to the Rec building in the products liability action. In effect, the trial court said Amert destroyed his right to recover under his insurance policies (by destroying the insurers' right to subrogation for additional damages) and that is so whether or not there was coverage, which question the court did not reach. Consequently, Amert cannot recover against Continental and Kundert-Williams for additional damages because their subrogation rights are already destroyed. We conclude, as did the trial court, that Amert had his opportunity to be made whole and is not entitled to additional compensation.

We do not reach Amert's second claim because it was not reached by the trial court and because it is immaterial at this point whether or not the policies provided coverage in view of our holding on the first claim. Accordingly, we affirm summary judgment to Continental and Kundert-Williams.

All the Justices concur.

---

* SDCL 21-1-10 provides: "Damages may be awarded in a judicial proceeding for detriment resulting after the commencement thereof, or certain to result in the future." We distinguish those cases involving continuing torts as opposed to those involving continuing damages from a single tort, such as exists here. *See Winterton v. Elverson,* 389 N.W.2d 633 (S.D. 1986); *Alberts v. Giebink,* 299 N.W.2d 454 (S.D. 1980).